IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| CRCGP LLC; dba C&R CONTRACTING | § | CASE NO: 04-31993 |
| LTD; dba ECLECTIC CONSTRUCTION | § | |
| Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| RODNEY TOW, *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 05-3521 |
| | § | |
| MASSOOD DANESH PAJOOH; aka | § | |
| DANESH MASSOOD PAJOOH; aka | § | |
| DANESH MASSOOD; aka PAJOOH | § | |
| MASSOOD DANESH; aka ; aka MASSOOD | § | |
| D. PAJ, *et al* | § | |
| Defendant(s) | § | |

**MEMORANDUM OPINION**

Based on the findings of fact and conclusions of law stated below, the Court finds that the transactions at issue in this adversary proceeding were usurious. Statutory damages are detailed in this memorandum opinion. A separate judgment will be issued.

**Factual Background**

The Debtor in this case, CRCGP, LLC ("C&R Contracting" or "C&R"), was a construction company. It was co-owned and co-managed by William Boarer and his son, Robert Boarer. Rodney Tow is the chapter 7 trustee, and is a plaintiff in this adversary. North Oaks Baptist Church is also a plaintiff in this adversary. The Defendant, Behnad Corporation, is engaged in real estate investment. Co-defendant, Massood Danesh Pajooh ("Massood") is the president of Behnad.

Early in August 2003, Massood was introduced to the Boarers by a mutual friend. The Boarers informed Massood that C&R Contracting had been subcontracted by a general contractor, GTT, to do work on the Montgomery County Annex project. C&R Contracting wanted Behnad to finance C&R's construction project.

On August 9, 2003, Behnad, via Massood, sent a letter to C&R Contracting stating that C&R had been pre-approved for a loan of capital to be used to finance labor and materials for the construction of the Montgomery County Annex. The loan consisted of four payments totaling $112,104.50. The loan was subject to final approval pending the fulfillment of certain requirements by C&R Contracting. One of those requirements was that GTT sign a subordination agreement, which would make checks payable to Behnad as well as C&R Contracting.

The subordination agreement was produced to Behnad with the signature of Mark Tullis, President of GTT. When Massood contacted Tullis to confirm that he signed the subordination agreement, Tullis stated that he did not sign any such document. Massood concluded that the signature was a forgery.

On August 12, 2003, Massood sent a letter to C&R Contracting. The subject line reads "Termination of Behnad's Loan to C&R Contracting." The letter sets out additional requirements that must be met in order for Behnad to engage in a "short-term investment in C&R."

On August 13, 2003, Behnad and C&R Contracting executed a Clarification of Profit Share Procedures. The document sets out terms for an "investment" of $112,104.50. It also states that in the case of any conflict between the subordination agreement and clarification agreement, the clarification agreement shall control. The first of the scheduled payments from

Behnad to C&R was made on August 13, 2003. The last payment was made on September 18, 2003.

On November 28, 2006, a trial was held in this adversary. The parties agreed to submit written closing arguments. Both parties timely submitted their arguments.

## Usury

It is well settled law that the elements of a usurious transaction are: (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction from the borrower of a greater compensation than the amount allowed by law for the use of the money by the borrower. *Holley v. Watts*, 629 S.W. 2d 694, 696 (Tex. 1982). A creditor is liable for usury upon contracting for, charging, or receiving interest above the legal maximum. TEX. FIN. CODE § 305.001(a).

In order to determine whether the elements of usury have been met, a court should look beyond the superficial form of the transaction. It is the substance of the agreement that determines whether a loan exists, if the obligation is absolute, and if the compensation is interest and above the legal maximum. *In re CPDC, Inc.*, 337 F.3d 436, 442 (5th Cir. 2003). At trial, the burden was on plaintiffs to demonstrate, by a preponderance of the evidence, each element of usury.

*A Loan of Money and Obligation to Repay*

Much of the disagreement in this case concerns the first element of usury: was this a loan of money? Plaintiff claims this was a loan; Defendant responds that the funds advanced to C&R were part of an investment.

When deciding whether a transaction was a loan or an investment, a court may also take into consideration the second element of usury—was there an absolute obligation to repay. "A

factor that courts consider when determining usury is whether repayment was based on a contingency. This factor is important because it helps a court in determining whether a transaction was a loan or an investment in the business." *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

The existence of a payment contingency supports the argument that a transaction is an investment. In a profit sharing arrangement there must be some element of risk (other than the risk of the insolvency of the borrower itself)—risk-taking being a hallmark of a bona fide investment. "Expectation of profit carries with it a connotation of potential appreciation or depreciation in value of the investment contract. That is, the arrangement must be so structured as to contemplate, at the outset, some risk-either that the investor could lose his investment, or that the value of his return could fluctuate." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 284 (5th Cir. 1992).

Plaintiff argues that there was no contingency in this transaction. Plaintiff directs the Court's attention to the Clarification of Profit Share Procedures (Ex. 6). Numbered paragraph two states that "C&R is agreed to guarantee the profit sharing of 25% to Behnad Inc." (Ex. 6). Defendant responds by pointing to the same Clarification, only emphasizing different portions thereof. Defendant stresses that numbered paragraph two refers to *profit sharing*. Defendant also points to numbered paragraph four, which states "C&R secures each investment by check with an advanced return of an additional 25% for each investment, subject to profits from the Montgomery Project." (Ex. 6). By stressing the "profit sharing" and "subject to profit" language of the Clarification, Defendant establishes that there is ambiguity in the written documents governing this transaction.

Given the ambiguity of the Clarification, the Court looks beyond the superficial form of the transaction to the substance of the agreement. *In re CPDC, Inc.*, 337 F.3d at 443-444. Mr. Boarer entered the transaction believing it was a loan. Defendant claims to have entered the transaction believing it was an investment, and hoping to receive a 25% return[1] on its investment. In fact, Defendant's entire case rests on the assertion that it was investing funds with the hope of a return on its investment, "subject to profits from the Montgomery project." What actually happened belies Defendant's position.

Defendant transferred various checks to C&R and other parties on behalf of C&R, totaling $108,881.19[2] (Stipulation, Ex. 34). C&R wrote "collateral checks" upon receiving disbursements from Defendant, pursuant to the Clarification, which states:

> C&R secures each investment by check with an advanced return of an additional 25% for each investment, subject to profits from the Montgomery Project.
>
> The C&R check will be deposited to Behnad account after the C&R receives a profit from General Contractor (G.T.T.), within 45 to 60 days.

(Ex. 6).

Defendant deposited six C&R collateral checks and one check jointly payable to C&R and Defendant from G.T.T. (pursuant to a joint check agreement). These checks totaled $133,776.50. Two of these checks, totaling $17,000, were returned unpaid. Thus, Defendant actually collected $116,776.50, or $7,895.31 more than it disbursed. But for the two bounced

---

[1] Defendant's concept of a 25% return is not measured by an annualized return. Defendant's 25% return is measured by his return on his gross advances, unaffected by time. For example, if a $10,000 advance is repaid in one month, an annualized 25% return would entitle defendant to a payment of $10,208.33 (i.e., a repayment of the $10,000 plus a profit component of $208.33). Defendant's contract provided for a repayment of $12,500.00 (i.e., a repayment of the $10,000 plus a profit component of $2,500). The issue is whether the "profit" should be characterized as interest or as investment return.

[2] The record shows an additional check issued to C&R in the amount of $4000. Neither party is able to recall the circumstances surrounding this check. However, Plaintiff agrees in his written closing to credit this $4000 as a sum advanced to C&R. Increasing the monies advanced to C&R decreases the usury damages. Consequently, the Court considers the total sum advanced to, or on behalf of, C&R to be $112,881.19 for the purposes of the damage calculation below.

checks, Defendant would have collected $24,895.31 more than it disbursed (a 23% return on investment).

Plaintiff has established that C&R never made a profit on this project. As stated above, there was a joint check agreement between C&R and Behnad, such that any check written to C&R by G.T.T. would be jointly payable to C&R and Behnad. G.T.T. only wrote one check in the amount of $51,015.93 (Ex. 22). This check was cashed by Behnad. This was the only payment made by G.T.T.

Defendant bases its defense on the grounds that Behnad made an investment in C&R that was subject to C&R making a profit. C&R never made a profit; Behnad's investment should have failed. Yet, Behnad collected $7,895 above its original outlay and attempted to collect more. Behnad never attempted to refund any money. The substance of what happened demonstrates that this transaction was not an investment. It was a loan.

Investments are not normally characterized by advanced payments of forecast profit percentages along with advance repayments of the investment. By examining the transactions between the parties as a whole, the Court concludes that the agreement between the parties was a loan under Texas law.

**Damages**

The Texas Finance Code, § 305.001[3] provides that:

(a) A creditor who contracts for, charges, or receives interest that is greater than the amount authorized by this subtitle is liable to the obligor for an amount that is equal to the greater of:
    (1) three times the amount computed by subtracting the amount of interest allowed by law from the total amount of interest contracted for, charged, or received; or
    (2) $2,000 or 20 percent of the amount of the principal, whichever is less.

---

[3] The Texas Finance Code was amended in 2005. The previous version of the Code applies to this case, and all citations are to the version in effect in 2003.

TEX. FIN. CODE § 305.001.

At the time the transaction was entered into, the maximum legal rate of interest for this type of contract was 24% per year. TEX. FIN. CODE 303.009.

Section 305.002 provides that:

(a) In addition to the amount determined under Section 305.001, a creditor who charges and receives interest that is greater than twice the amount authorized by this subtitle is liable to the obligor for:
(1) the principal amount on which the interest is charged and received; and
(2) the interest and all other amounts charged and received.

TEX. FIN. CODE § 305.002.

The following is a chart of the checks advanced to, or on behalf of, C&R:

| Check number | Date | Advance |
|---|---|---|
| | | |
| 2002 | 13-Aug-03 | $24,000.00 |
| 2003 | 13-Aug-03 | $13,085.73 |
| 2008 | 15-Aug-03 | $16,391.25 |
| 2007 | 25-Aug-03 | $7,500.00 |
| 2011 | 29-Aug-03 | $10,574.00 |
| 1500 | 3-Sep-03 | $4,000.00 |
| 1503 | 5-Sep-03 | $6,800.00 |
| 1500 | 10-Sep-03 | $2,894.21 |
| 2012 | 12-Sep-03 | $20,836.00 |
| 1003 | 18-Sep-03 | $6,800.00 |
| | | |
| | TOTAL | $112,881.19 |

The following is a chart of payments made to Behnad from C&R:

| Check Number | Date Cashed | Payment |
|---|---|---|
| 2385 | 9-Oct-03 | $51,015.93 |
| 1008 | 23-Oct-03 | $4,097.81 |
| 1002 | 24-Oct-03 | $29,662.76 |
| 1031 | 24-Oct-03 | $10,000.00 |
| 1032 | 24-Oct-03 | $22,000.00 |
| | | |
| | TOTAL | $116,776.50 |

Certain payments made to Behnad from C&R appear to have been allocated to specific advances, and the Court has respected such allocations when determining damages pursuant to the Texas Finance Code §§ 305.001 and 305.002. Such adherence is necessary, since the Finance Code provides a formula for damages which relies on amounts contracted for and received for specific loans. Where allocation of payments is not evident, the Court has applied payments to the oldest outstanding disbursements first.

Payment made by check number 1002, in the amount of $29,662.76, was cashed on October 24, 2003. However, the check was dated September 12, 2003, and it is exactly equal to the disbursements of September 10 and September 12 (total $23,730.21) plus 25% ($5932.55). Therefore, the Court has allocated the October 24th payment to these two loans.

The damages for each of these loans, as well as the other loans, is calculated as follows:

A. Pursuant to Texas Finance Code § 305.001:

    a. The maximum amount of interest allowed by law (24% per year) is calculated for the loan. This requires that the yearly interest rate of 24% be divided by 365, in order to determine the allowable daily rate. That number must then be multiplied

        by the number of days the loan was outstanding, in order to determine the actual allowable charge for a loan of that duration. Finally, the allowable rate must be multiplied by the amount of the loan, to determine the allowable dollar amount.

    b. The amount of interest actually charged is calculated.

    c. If the amount charged is greater than the amount allowed by law, the difference is calculated.

    d. The difference is multiplied by 3.

  B. Pursuant to Texas Finance Code § 305.002:

    e. If the amount of interest actually charged is greater than twice the amount allowed by law, the amount of the principal is added to the amount calculated pursuant to § 305.001.

|   |   | Sept 10 loan |   |
|---|---|---|---|
| a | Maximum Legal amount of interest | 24% divided by 365 multiplied by 44 (days from September 10 to October 24) multiplied by $2894.21 (loan amount) | $83.73 |
| b | Interest charged | $2894.21 multiplied by 25% | $723.55 |
| c | Difference between legal and actual charges | Difference between interest charged and allowed | $639.82 |
| d | Trebling | Difference multiplied by 3 (i.e. § 305.001 damages) | $1919.46 |
|   |   | Is (b) greater than twice (a)? | Yes |
| e | Principal plus treble damages | § 305.002 damages = § 305.001 damages plus principal | $4,813.67 |

|   |   | **Sept 12 loan** |   |
|---|---|---|---|
|   |   |   |   |
| a | Maximum Legal amount of interest | 24% divided by 365 multiplied by 42 (days from September 12 to October 24) multiplied by $20,836 (loan amount) | $575.42 |
| b | Interest charged | $20,836 multiplied by 25% | $5209.00 |
| c | Difference between legal and actual charges | Difference between interest charged and allowed | $4633.58 |
| d | Trebling | Difference multiplied by 3 (i.e. § 305.001 damages) | $13900.75 |
|   |   | Is (b) greater than twice (a)? | Yes |
| e | Principal plus treble damages | § 305.002 damages = § 305.001 damages plus principal | $34,736.75 |

Having applied this specific payment, the Court looks to the next repayment, which is check number 2385 from G.T.T. for $51,015.93. The Court applies this payment to the oldest outstanding disbursements.

|   |   | **August 13 loan** |   |
|---|---|---|---|
|   |   |   |   |
| a | Maximum Legal amount of interest | 24% divided by 365 multiplied by 57 (days from August 13 to October 9) multiplied by $37,085.73 (loan amount) | $1389.95 |
| b | Interest charged | $37,085.73 multiplied by 25% | $9271.43 |
| c | Difference between legal and actual charges | Difference between interest charged and allowed | $7881.48 |
| d | Trebling | Difference multiplied by 3 (i.e. § 305.001 damages) | $23,644.44 |
|   |   | Is (b) greater than twice (a)? | Yes |
| e | Principal plus treble damages | § 305.002 damages = § 305.001 damages plus principal | $60,730.17 |

If the $51,015.93 paid by G.T.T. had been applied to the August 13th loan in accordance with the loan contract, $4,658.77 would remain (i.e. $51,015.93 – [($24,000 + $13,085.73) * 1.25] = $4,658.77).  The Court applies that money to the next oldest outstanding disbursement— the August 15th loan.  However, the $4,658.77 remaining from the October 9th payment is not enough to fully satisfy the August 15th loan.  Therefore, the Court will first apply the surplus sum from the October 9th payment to the August 15th loan.  The allowable interest from August 15th to October 9th must therefore be calculated.  Once the October 9th surplus is applied, the total allowable interest on the new, reduced sum must be figured.  The two allowable interests must be added together to figure out what the total allowable interest is on the August 15th loan.  This total legal amount must then be subtracted from the amount charged, which was 25%.

The initial payment on this loan was made October 9th.  The next and final payment was made on October 24th.

Additionally, in calculating the actual interest paid on the August 15th loan, the Court looks to check number 1008.  This check is for $4,097.81.  This is exactly 25% of the August 15th loan.  Thus, the Court uses this number as the interest that was actually collected.

|   |   | **August 15 loan (up to October 9 and then October 9 to October 24)** |   |
|---|---|---|---|
| a | Maximum Legal amount of interest (first period) | 24% divided by 365 multiplied by 55 (days from August 15 to October 9) multiplied by $16,391.25 (loan amount) | $592.78 |
|   | Balance before first payment | Legal total of principal and interest as of October 9 | $16,984.03 |
|   | Balance after first payment | Minus October 9 surplus payment of $4658.77 | $12,325.26 |
| a' | Maximum Legal amount of interest (second period) | 24% divided by 365 multiplied by 15 (days from October 9 to October 24) multiplied by $12,325.26 (loan amount) | $121.56 |
| a" | Maximum Legal amount of interest (combined) | Total legal interest allowed (a + a') | $714.34 |
| b | Interest charged | $16,391.25 multiplied by 25% | $4,097.81 |
| c | Difference between legal and actual charges | Difference between interest charged and allowed | $3,383.47 |
| d | Trebling | Difference multiplied by 3 (i.e. § 305.001 damages) | $10,150.41 |
|   |   | Is (b) greater than twice ( a")? | Yes |
| e | Principal plus treble damages | § 305.002 damages = § 305.001 damages plus principal | $26,541.66 |

The actual amount charged on the August 15th loan after the October 9th payment was $12,446.83 ($12,325.26 + 121.56). The Court applies funds from the October 24th payment to this balance. That means that $19,553.17 remains from the October 24th payment after payment of the August 15th loan.

|   |   | **August 25 loan** |   |
|---|---|---|---|
| a | Maximum Legal amount of interest | 24% divided by 365 multiplied by 60 (days from August 25 to October 24) multiplied by $7,500 (loan amount) | $295.89 |
| b | Interest charged | $7500 multiplied by 25% | $1,875.00 |
| c | Difference between legal and actual charges | Difference between interest charged and allowed | $1,579.11 |
| d | Trebling | Difference multiplied by 3 (i.e. § 305.001 damages) | $4,737.33 |
|   |   | Is (b) greater than twice (a)? | Yes |
| e | Principal plus treble damages | § 305.002 damages = § 305.001 damages plus principal | $12,237.33 |

If the total amount charged for the August 25th payment was $1875, then $10,178.17 remained from the October 24th payment after the August 25th loan was satisfied. This money was insufficient to satisfy the principal for the remaining loans. Applying the funds to the August 29th loan leaves $395.83 payable on that loan. No additional amounts (other than those specifically allocated and discussed below) were charged or collected on the August 29th loan. Therefore, the Court finds no evidence that damages should be awarded with respect to the August 29th loan.

Behnad made two advances of $6,800—one on September 5, 2003, and one on September 18, 2003. Each of these advances was specifically secured by collateral checks of $8,500. Behnad attempted to cash these checks, but both checks were returned marked insufficient funds.

Section 305.001 is applicable in cases when a creditor "charges" usurious interest. A creditor need not actually receive the usurious interest for the section to be applicable. Section 305.002, however, requires a creditor "charges *and* receives" usurious interest greater than twice

the legal rate. Since these two checks bounced and Behnad never actually received the interest, the Court finds that § 305.002 does not apply. However, § 305.001 does apply.

| | | **September 5 loan** | |
|---|---|---|---|
| a | Maximum Legal amount of interest | 24% divided by 365 multiplied by 49 (days from September 5 to October 24) multiplied by $6,800 (loan amount) | $219.09 |
| b | Interest charged | $6800 multiplied by 25% (interest charged) | $1,700.00 |
| c | Difference between legal and actual charges | Difference between interest charged and allowed | $1,480.91 |
| d | Trebling | Difference multiplied by 3 (i.e. § 305.001 damages) | $4,442.73 |

| | | **September 18 loan** | |
|---|---|---|---|
| a | Maximum Legal amount of interest | 24% divided by 365 multiplied by 36 (days from September 18 to October 24) multiplied by $6,800 (loan amount) | $160.96 |
| b | Interest charged | $6800 multiplied by 25% (interest charged) | $1,700.00 |
| c | Difference between legal and actual charges | Difference between interest charged and allowed | $1,539.04 |
| d | Trebling | Difference multiplied by 3 (i.e. § 305.001 damages) | $4,617.11 |

The sum of all the damages calculated above is as follows:

| Check number | Date | Advance | Section 305.001 Damages | Section 305.002 Damages | Total Damages |
|---|---|---|---|---|---|
| 2002 2003 | 13-Aug-03 | $37,085.73 | $23,644.44 | $60,730.17 | $84,374.61 |
| 2008 | 15-Aug-03 | $16,391.25 | $10,150.41 | $26,541.66 | $36,692.07 |
| 2007 | 25-Aug-03 | $7,500.00 | $4,737.33 | $12,237.33 | $16,974.66 |
| 2011 | 29-Aug-03 | $10,574.00 | $0.00 | $0.00 | $0.00 |
| 1500 | 3-Sep-03 | $4,000.00 | $0.00 | $0.00 | $0.00 |
| 1503 | 5-Sep-03 | $6,800.00 | $4,442.73 | $0.00 | $4,442.73 |
| 1500 | 10-Sep-03 | $2,894.21 | $2,000.00 | $4,813.67 | $6,813.67 |
| 2012 | 12-Sep-03 | $20,836.00 | $13,900.75 | $34,736.75 | $48,637.50 |
| 1003 | 18-Sep-03 | $6,800.00 | $4,617.11 | $0.00 | $4,617.11 |
| | TOTAL | $112,881.19 | **TOTAL DAMAGES** | | **$202,552.35** |

Total statutory damages are $202,552.35. However, after allocating principal and interest as shown in the loan tables above, Behnad received no payment on $395.83 of the August 29th loan, and no payment at all on the September 3, 5, or 18 loans. This means Behnad was unpaid on $17,995.83, and the Court will offset this amount against the damages. Thus the recoverable damages are $184,556.52.

### Attorney's Fees

Texas Finance Code § 305.005:

> A creditor who is liable under Section 305.001 or 305.003 is also liable to the obligor for reasonable attorney's fees set by the court.

TEX. FIN. CODE § 305.005.

The Court has found that the Defendant is liable for damages under § 305.001. Plaintiff's attorney accepted this case on a one-third contingency fee. Defendant stipulated to this arrangement at trial.

As stated above, the recoverable damages total $184,556.52. One-third of this amount is $61,518.84. Per § 305.005, Defendant is liable for this amount. Thus, Defendant's total liability is $264,075.36.

## Conclusion

The transaction between the Plaintiff and Defendant was a loan which was subject to a usurious interest rate. Defendant is liable for statutory damages of $202,552.35. This amount is offset by $17,995.83, the amount disbursed by Defendant to Plaintiff, but not repaid. Thus the recoverable damages are $184,556.52. Defendant is also liable for attorney's fees in the amount of $61,518.84. The total award for Plaintiff is $264,075.36.

A separate judgment will issue.

Signed at Houston, Texas, on February 6, 2007.

MARVIN ISGUR
United States Bankruptcy Judge